U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

MAR 2 1 2001

ROBERT H. SHEMWELL, CLERK
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

STANFORD B.  GAUTHIER, II

**CV01-0494 L0**

CAUSE NO.

Versus

JUDGE
*JURY DEMANDED*
MAGISTRATE-JUDGE

EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS
UNION, L.L.C. A/K/A TRANS
UNION CORPORATION, BANC
ONE TEXAS LEASING CORP.,
BANK ONE, TEXAS, N.A., and
BANC ONE ACCEPTANCE
CORPORATION

RECEIVED
MAR 2 1 2001
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

JUDGE MELANCON
MAGISTRATE JUDGE METHVIN

### *ORIGINAL COMPLAINT*
### *AND REQUEST FOR TRIAL BY JURY*

NOW INTO COURT, through undersigned counsel, comes **STANFORD B.  GAUTHIER, II**, Plaintiff in the above entitled and captioned matter, who respectfully prays for Judgment of this Honorable Court against defendants, jointly, severally and in solido, as follows:

1.

Plaintiff, **STANFORD B.  GAUTHIER, II,** is a major domiciliary of Breaux Bridge, St. Martin Parish, Louisiana.

2.

Made Defendants are the following parties:

a) **EXPERIAN INFORMATION SOLUTIONS, INC.,** hereinafter which may also be referred to as **"EXPERIAN,"** a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana;

b) **TRANS UNION, L.L.C. A/K/A TRANS UNION CORPORATION**, hereinafter which may also be referred to as **"TRANS**



-1-

UNION" or "TU," a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana;

c)   **BANC ONE TEXAS LEASING CORP.**, hereinafter which may also be referred to as **"BANK ONE" or "BKONE,"** a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana;

d)   **BANK ONE, TEXAS, N.A.**, hereinafter which may also be referred to as **"BANK ONE" or "BKONE,"** a foreign corporation which, upon information and belief, is authorized to do and doing business in the State of Louisiana; and

e)   **BANC ONE ACCEPTANCE CORPORATION**, hereinafter which may also be  referred to as **"BANK ONE" or "BKONE,"** a

foreign corporation which, upon information and belief,

is authorized to do and doing business in the State of

Louisiana.

All the above listed Defendants may hereinafter be referred collectively to as "Defendants."

3.

This Honorable Court has subject matter jurisdiction over this action as it arises under federal law. **28 U.S.C. 1331.** Further, plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over all non-federal claims inasmuch as this set of allegations and claims constitute a single action and should be heard in the same cause.  Further, venue as to the defendants is proper in this judicial district pursuant to **28 U.S.C. 1391[c]**.

4.

Plaintiff, *STANFORD B. GAUTHIER, II,* respectfully requests a trial by jury.

5.

Plaintiff, *STANFORD B. GAUTHIER, II*, respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against some or all of the Defendants under the provisions of the Fair Credit Reporting Act and/or states' laws.

6.

Plaintiff, *STANFORD B. GAUTHIER, II,* respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to an award of damages, the costs of litigation and reasonable attorneys' fees incurred by Plaintiff may be awarded against some or all of the defendants under the provisions of the Fair Credit Reporting Act and/or other federal and states' laws.

**_GENERAL FACTUAL BASIS FOR COMPLAINT_**

**1996**

7.

All Cajun Food Co., a domestic corporation, incorporated in February, 1990, with its principal place of business in Breaux Bridge, St. Martin Parish, Louisiana, entered into an auto lease with Banc One Texas Leasing Corp. That auto lease account was assigned account number 950001750056 and is shown as opened in

-3-

July, 1996 on subsequent credit reportings by Bank One.

8.

Plaintiff, as an officer of All Cajun Food Co., executed the agreements in his representative capacity and clearly indicated his capacity as "President" of All Cajun Food Co.

9.

Some time after the execution of the auto lease, All Cajun Food Co. was acquired by another company and plaintiff ceased being a part of All Cajun Food Co. and the auto lease was assumed and taken over by the successor company.

10.

Plaintiff no longer had access to or possession of the auto subject of the above referenced auto lease.

## August 1999

11.

On or about August 5, 1999, Bank One Southern Indirect L/S [Bank One] wrote plaintiff and demanded payment from plaintiff in the sum of $1,187.80 on the auto lease, which was allegedly in default.

12.

Bank One referred to plaintiff as the customer and advised him that "YOUR LEASE IS PAST DUE!!"

13.

Bank One made clear to plaintiff that it was attempting to collect a debt from him and that Bank One considered "your" [his alleged] account to be in default and past due.

-4-

14.

Just four days later, on or about August 9, 1999, Bank One Southern Indirect L/S [Bank One] again wrote plaintiff and demanded payment from plaintiff in the sum of $1,187.80 on the auto lease, which was allegedly in default.

15.

This time Bank One again referred to plaintiff as the customer and advised him that "YOUR ACCOUNT IS SERIOUSLY DELINQUENT!!"

16.

Bank One made again clear to plaintiff that it was attempting to collect a debt from him and that Bank One considered "your" [his alleged] account to be in default and past due.

17.

Bank One instructed plaintiff to make payment "within seventy-two [72] hours of date of the letter." The collection letter goes on to threaten legal action against plaintiff.

18.

On or about August 10, 1999, plaintiff called Bank One, as directed by the letter, and fully disputed the alleged debt to Bank One.

19.

Plaintiff likewise requested a copy of the source documents to determine why Bank One would think that plaintiff owed the alleged debt.

20.

It was not until August 17, 1999, that Bank One's employee, Heather Baldwin, telefaxed the lease agreement to "All Cajun Foods, Inc." at the telefax number supplied by plaintiff in the August 10, 1999, conversation.

**September 1999**

21.

On or about September 10, 1999, plaintiff was denied credit by American Express Small Business Services based upon an Experian credit report bearing the false and damaging credit reporting Bank One made about plaintiff.

22.

The false and damaging credit reporting Bank One made about plaintiff was, at least, a substantial factor in causing the credit denial by American Express Small Business Services.

23.

On or about September 21, 1999, plaintiff disputed the false and damaging credit reporting Bank One made about plaintiff to Experian thereby triggering reinvestigation. In turn, Experian issued dispute verification forms to Bank One regarding plaintiff's disputes and complaints.

24.

Bank failed to properly respond to the reinvestigation requests by Experian in violation of 15 U.S.C. 1681s-2[b].

25.

Thereafter Bank One continued to "verify" and confirm the

false and damaging credit reporting Bank One made about plaintiff to Experian resulting in the data staying in the credit files and credit reports of and concerning plaintiff.

26.

On or about September 29, 1999, Rent Roll, Inc., was considering plaintiff for rental services and accessed plaintiff's credit report prepared and issued by the national credit reporting agency, Experian.  That report contained false and damaging data reportings by Bank One and Farmers Merchant Bank & Trust.

**October 1999**

27.

On or about October 1, 1999, plaintiff wrote a lengthy letter to Bank One, through its auto leasing department, which has supplied the August 17 telefax, and explained that he did not owe the alleged debt on the auto lease.

28.

In the letter plaintiff also advised Bank One of the circumstances under which he left the employment and association of All Cajun Food Co.

29.

Plaintiff also advised Bank One that false, derogatory credit reportings by Bank One had recently caused plaintiff to be denied credit in a recent credit application.

30.

Plaintiff again requested any proof which Bank One believed

-7-

would support Bank One's collection campaign against plaintiff.

31.

On or about October 6, 1999, Progressive Insurance Company was considering plaintiff for insurance and accessed plaintiff's credit report prepared and issued by the national credit reporting agency, Experian.  That report contained false and damaging data reportings by Bank One and Farmers Merchant Bank & Trust.

32.

On or about October 22, 1999, plaintiff again wrote Bank One and again disputed the alleged debt.

33.

Plaintiff advised Bank One that the lease agreement failed to render plaintiff liable for the alleged debt.

34.

Plaintiff again demanded correction of the false credit reportings made about him by Bank One to consumer credit reporting agencies with whom Bank One subscribes.

35.

During October, 1999 plaintiff continued to supply additional information to Experian, while Experian pretended not to understand plaintiff's disputes and pretended not to know plaintiff's personal identifiers.

**November 1999**

36.

On or about November 3, 1999, Arthur Mann, an attorney for

-8-

and authorized representative of Bank One, wrote plaintiff and advised plaintiff that Bank One was canceling the auto lease pursuant to La.R.S. 9:3320.

37.

Arthur Mann referred to the subject lease as "your lease account" and again indicates Bank One's position that plaintiff was "in default" on the alleged obligation.

38.

On or about November 3, 1999, plaintiff wrote Arthur Mann, the attorney for and authorized representative of Bank One, and advised Mann that plaintiff had contacted All Cajun Food Co. and that All Cajun Food Co. was aware of the lease cancellation.

39.

At all pertinent times herein, Arthur Mann, Esq., was acting with the approval of Bank One, his client, and pursuant to Bank One's direction.

40.

Plaintiff likewise provided Mann copies of plaintiff's prior letter of October 22, 1999, to Bank One.

41.

Plaintiff likewise informed Mann that Bank One failed to respond to plaintiff's dispute. Plaintiff also reiterated his disputes and demand that bank One cease its wrongful collection campaign against plaintiff and that Bank One must retract and cure the false and damaging credit reporting Bank One made about plaintiff.

42.

On or about November 24, 1999, in an untimely respond to
plaintiff's September 1999 disputes, Experian sent plaintiff a
post-reinvestigation summary report and advised plaintiff that
Experian had decided to continue to report the false and damaging
credit reporting Bank One made about plaintiff.  Experian
likewise continued to report another inaccurate account which was
disputed by plaintiff.

43.

Experian still had not responded to plaintiff's September,
1999 request for a copy of his credit report, in violation of 15
U.S.C. 1681g.

44.

According to Experian's credit reportings in the year 2000,
in November, 1999, Bank One continued to verify and report the
false and damaging credit reporting Bank One made about
plaintiff.

**December 1999**

45.

On or about December 7, 1999, Plaintiff again requested his
credit report from Experian.

46.

On or about December 16, 1999, plaintiff received a copy of
his Experian consumer credit report.  That report contained a
false and damaging credit reporting trade reference by Bank One.
The reference suggested that plaintiff was a "co-signor" on the

-10-

All Cajun Food Co. debt which was allegedly in default.  Further, Experian reported that bank One had re-reported and "verified" the reference as applicable to plaintiff.

47.

On or about December 20, 1999, plaintiff wrote a dispute letter to Farmers Merchant Bank & Trust thereby again disputing the inaccurate credit reporting by Farmers Merchant Bank & Trust to the consumer credit reporting agencies to whom they subscribe.

48.

Finally, on or about December 20, 1999, plaintiff received a copy of his credit report from Experian.  The report contained the inaccurate and damaging trade reportings by Bank One and Farmers Merchant Bank & Trust.

49.

On or about December 20, 1999, plaintiff received a copy of his Equifax Credit Information Services and Experian consumer credit reports from Farmers Merchant Bank & Trust by telefax. Those reports contained a false and damaging credit reporting trade reference by Bank One.

**January 2000**

50.

On or about January 3, 2000, plaintiff wrote Arthur Mann and confirmed that Mann failed to respond to plaintiff's questions about the validity of Bank One's collection campaign against him.

51.

Plaintiff likewise advised Mann that plaintiff would

initiate a lawsuit based on the baseless and damaging acts and fault of Bank One.

52.

On or about January 6, 2000, Arthur Mann wrote plaintiff and advised plaintiff that Bank One agreed with plaintiff's position.

53.

Mann conceded that plaintiff had merely executed the auto lease as a corporate representative and that there was no basis for holding plaintiff personally liable for the alleged debt.

54.

Plaintiff likewise again directed Bank One to retract and cure the false and damaging credit reportings made about plaintiff by Bank One to the consumer credit reporting agencies to which Bank One subscribes.

55.

On or about January 12, 2000, MBNA America, a credit card bank, was considering plaintiff for credit and twice accessed plaintiff's credit report prepared and issued twice by the national credit reporting agency, Trans Union.  That report contained false and damaging data reportings by Bank One.

56.

On or about January 13, 2000, American Express Small Business Services was considering plaintiff for credit and accessed plaintiff's credit report prepared and issued by the national credit reporting agency, Experian.  That report contained false and damaging data reportings by Bank One.

57.

On or about January 18, 2000, Landamerica Financial Group was considering plaintiff for credit and accessed plaintiff's credit report prepared and issued by the national credit reporting agency, Equifax Credit Information Services. That report contained false and damaging data reportings by Bank One.

58.

On or about January 20, 2000 plaintiff wrote Trans Union and requested his credit report.

59.

On or about January 26, 2000, plaintiff was again denied credit by American Express Small Business Services based upon the January 13, 2000, Experian credit report bearing the false and damaging credit reporting Bank One made about plaintiff.

60.

The false and damaging credit reporting Bank One made about plaintiff was, at least, a substantial factor in causing the credit denial by American Express Small Business Services.

61.

On or about January 26, 2000, Trans Union printed a blank credit report and sent it to plaintiff thereby suggesting that Trans Union had no credit references on file regarding plaintiff.

62.

In this bogus report, Trans Union blanked out plaintiff's social security number.

63.

Trans Union purposefully concealed plaintiff's credit data, as attributed by Trans Union, from plaintiff in violation of the mandates of the FCRA, 15 U.S.C. 1681, et. seq.

### February 2000

64.

Shortly after February 2, 2000, plaintiff received a copy of his Equifax Credit Information Services consumer credit report from Credit Bureau of Baton Rouge. That report contained a false and damaging credit reporting trade reference by Bank One. The reference suggested that plaintiff was a "co-signor" on the All Cajun Food Co. debt which was allegedly in default. Further, Equifax Credit Information Services reported that Bank One had re-reported and "verified" the reference as applicable to plaintiff.

65.

Shortly after receipt of his Equifax Credit Information Services credit report from Credit Bureau of Baton Rouge, plaintiff filled out the dispute form by listing the pertinent Bank One account information and attaching the Arthur Mann letter to explain that the account should not be attributed to plaintiff. Plaintiff sent the dispute and attachments to Equifax Credit Information Services, as directed by the correspondence.

66.

On or about February 3, 2000 plaintiff contacted Trans Union and demanded that Trans Union prepare and issue plaintiff's true credit report to him.

-14-

67.

On or about February 4, 2000, plaintiff was again denied credit by MBNA America based upon a Trans Union credit report bearing the false and damaging credit reporting Bank One made about plaintiff.

68.

The false and damaging credit reporting Bank One made about plaintiff was, at least, a substantial factor in causing the credit denial by MBNA America.

69.

On February 8, 2000, Trans Union wrote plaintiff and pretended to be unable to locate plaintiff's address in their records and requested more identification documentation from plaintiff.

70.

On or about February 10, 2000, plaintiff wrote and requested his credit report from Experian and indicated his recent credit denial based upon Experian's credit report. Experian, like in 1999, again failed to timely respond with a copy of plaintiff's credit report.

71.

On February 16, 2000 Equifax Credit Information Services, through its Credit Bureau of Baton Rouge office, accessed plaintiff's Trans Union credit report.

72.

On or about February 17, 2000, plaintiff again wrote and

requested his credit report from Trans Union and indicated the history of his efforts to request the credit report and Trans Union's failures to produce the report.  Trans Union again failed to timely respond with a copy of plaintiff's credit report.

## March 2000

73.

According to Experian's credit reportings, in March, 2000, Bank One continued to report the false and damaging Bank One account and attributed it to plaintiff.  Further, in March, 2000, Bank One advanced the negative rating to that of charge off.

74.

On or about March 10, 2000, plaintiff again wrote and requested his credit report from Experian and indicated his recent credit denial based upon Experian's credit report.

75.

On or about March 10, 2000, plaintiff again wrote and requested his credit report from Trans Union.  Trans Union still had not produced the report.

76.

Finally on or about March 15, 2000 Trans Union printed plaintiff's credit report and mailed it to plaintiff thereafter. Plaintiff ultimately received the report.

77.

The Trans Union consumer credit report dated March 15, 2000 still contained the false and damaging credit reporting trade reference by Bank One.

78.

The Bank One trade reporting is still shown with a "maximum delinquency" rating, which is the very most damaging trade reporting rating and description which can be attributed to a trade reporting.

79.

Finally on or about March 17, 2000 Experian printed plaintiff's credit report and mailed it to plaintiff thereafter. Plaintiff ultimately received the report.

80.

The Experian consumer credit report dated March 17, 2000 still contained the false and damaging credit reporting trade reference by Bank One.

81.

The Bank One trade reporting is still shown as a charged off/collection account, which is the very most damaging trade reporting rating and description which can be attributed to a trade reporting.

82.

On or about March 28, 2000 plaintiff again wrote Experian and disputed the false and damaging Bank One trade reporting. Plaintiff supplied Experian copies of Mann's letter admitting Bank One's efforts to collect from plaintiff had no merit.

83.

On or about March 28, 2000 plaintiff again wrote Trans Union and disputed the false and damaging Bank One trade reporting.

Plaintiff supplied Trans Union copies of Mann's letter admitting Bank One's efforts to collect from plaintiff had no merit.

84.

Plaintiff again demanded removal of the false data from his credit reports.

85.

On or about March 28, 2000 plaintiff again wrote Equifax Credit Information Services, in light of Equifax Credit Information Services's non-response to plaintiff's early February dispute, and plaintiff again disputed the false and damaging Bank One trade reporting and provided copies of his earlier dispute. Plaintiff requested a response from Equifax Credit Information Services.

## April 2000

86.

On or about April 3, 2000 Trans Union wrote plaintiff and suggested that Trans Union had just "received your request" for reinvestigation.

87.

In fact, Trans Union had a number of plaintiff's disputes and had ignored them.

88.

On or about April 5, 2000 Experian wrote plaintiff to advise plaintiff that Experian was disregarding the various attached documentary items plaintiff again supplied Experian in support of his continued disputes and complaints about the false and

-18-

damaging credit reporting Bank One made about plaintiff.

89.

Experian advised plaintiff that Experian intended to follow its verification process which amounts to nothing more than parroting the position of Experian's subscriber-customer, in this case, Bank One.

90.

Finally, on or about April 13, 2000 Equifax Credit Information Services printed plaintiff's credit report and the results of its reinvestigation of the Bank One trade reporting. Equifax Credit Information Services advised plaintiff that it was deleting the false and damaging Bank One trade reporting subject of this lawsuit.

91.

On or about April 24, 2000, in response to plaintiff's disputes, Experian sent plaintiff a post-reinvestigation summary report and advised plaintiff that Experian had decided to continue to report the false and damaging credit reporting Bank One made about plaintiff.

92.

Experian again ignored the Arthur Mann letter acknowledging Bank One's wrongful collection campaign.

**May 2000**

93.

On or about May 5, 2000 plaintiff wrote Experian and again disputed and, understandably, complained about the continued

-19-

reporting of the same Bank One trade which is the subject of this suit.

94.

Plaintiff asked Experian a number of questions about how it allegedly was conducting any investigation into plaintiff's repeated disputes.

95.

On or about May 17, 2000 Experian wrote plaintiff and advised plaintiff that his duplicate dispute had already been investigated and was verified as accurate by Bank One thus Experian believes that further disputes by plaintiff are frivolous.

96.

Experian went on to suggest that plaintiff also contact Bank One, as if to suggest that plaintiff had not already done so despite the Mann letters.

97.

In yet another form letter of May 17, 2000, Experian advised plaintiff that Experian had already investigated the Bank One trade reporting and that it would remain.

98.

As of May 19, 2000 Trans Union still had not responded to plaintiff's reinvestigation requests.  Plaintiff wrote Trans Union on May 19, 2000 and Trans Union received that letter on May 23, 2000.

99.

Finally, on or about May 26, 2000 Trans Union printed plaintiff's credit report and the results of its reinvestigation of the Bank One trade reporting. Trans Union had finally deleted the Bank One trade reporting though Trans Union failed to explain the absence of the Bank One item from the report.

### June 2000

100.

On or about June 9, 2000 plaintiff again wrote Experian and asked Experian about its recent letters of May, 2000.

101.

On or about June 19, 2000 Experian wrote plaintiff and advised plaintiff that his duplicate dispute had already been investigated and was verified as accurate by Bank One thus Experian believes that further disputes by plaintiff are frivolous.

102.

Experian went on to suggest that plaintiff also contact Bank One, as if to suggest that plaintiff had not already done so despite the Mann letters.

103.

In the form letter of June 19, 2000, Experian advised plaintiff that Experian had already investigated the Bank One trade reporting and that it would remain.

104.

In the latter half of 2000, plaintiff had additional difficulties obtaining credit based upon the continued false

-21-

credit reportings by defendants.

105.

Despite diligent and costly efforts by Plaintiff, his credit reports continued to contain the false and damaging information. Upon information and belief, Plaintiff's consumer credit reports still contain false and damaging information, previously disputed.

106..

Plaintiff has suffered damages due to the tortious and illegal actions or inactions directed at Plaintiff by Defendants, individually and collectively.

107.

Defendants have tortiously and illegally damaged plaintiff's most valued property right and asset through their fault described herein.

108.

The types of injuries and harms incurred by plaintiff were foreseeable.  Each defendant was in the best position[s], singularly and collectively, to prevent the false reportings.

### *LIABILITY OF EXPERIAN*

109.

In this action, Defendant, **EXPERIAN**, is a *consumer credit reporting agency* as defined in the Fair Credit Reporting Act. **15 U.S.C. 1681a.**

110.

In this action, Defendant, **EXPERIAN**, prepared, issued, assembled, transferred and otherwise reproduced *consumer reports*, regarding Plaintiff, as defined in the Fair Credit Reporting Act. **15 U.S.C. 1681a.**

### 111.

**EXPERIAN** maintains a contract with smaller affiliate bureau and legal and contractual agent, wherein they share data and other assets.

### 112.

**EXPERIAN** allows their credit reporting database, which takes in, warehouses, maintains and manipulates data supplied by their subscribers, to be accessed by their affiliate bureaus and subscribers.

### 113.

**EXPERIAN** and their affiliate bureaus and subscribers have access to consumer credit reports, prepared by **EXPERIAN**, from the same data pool, in the same database, and **EXPERIAN** has duties to each consumer, including plaintiff, about whom they report, as provided in the Fair Credit Reporting Act.

### 114.

**EXPERIAN**'s subscribers have repeatedly supplied false data to **EXPERIAN** and attributed said data to plaintiff.

### 115.

Plaintiff advised **EXPERIAN,** through their subscribers and

-23-

*directly*, on multiple occasions, of the false data and demanded that the data be removed from his consumer reports and files.

116.

**EXPERIAN** failed to properly reinvestigate plaintiff's disputes and **EXPERIAN** continued to prepare, and issue false consumer reports.

117.

**EXPERIAN** and the disputed creditors-subscribers, exchanged information about plaintiff's disputes and the inaccurate accounts through their reinvestigation divisions, physical file division, and *FILE ONE and SUPERCAPS systems*, internal notes and CDV/ACDV/UDF processes.

118.

**EXPERIAN** and the disputed creditors-subscribers, were very aware of plaintiff's disputes, as well as their inadequate and illegal reinvestigation, and the subscribers' responses to their contacts and their decision to leave the disputed, false data as attributable to plaintiff.

119.

**EXPERIAN** took inadequate action to correct plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

120.

Likewise they failed to take necessary and reasonable steps to prevent further inaccuracies from entering plaintiff's credit

file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by **EXPERIAN** and relayed for further use, reliance and publication by their subscribers.

121.

**EXPERIAN** failed to adopt and follow "reasonable procedures" to assure the confidentiality, proper utilization and maximum possible accuracy of Plaintiff's consumer credit reports and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated in order to prepare consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations.

122.

**EXPERIAN** failed to adopt and follow "reasonable procedures" to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data bank, as required by the Fair Credit Reporting Act.

123.

From some unknown date through the present time period, Defendant, **EXPERIAN**, has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from

-25-

the plaintiff and subscribers that such information was inaccurate.

124.

*EXPERIAN* through its fault, as described herein, caused great and irreparable injury to Plaintiff herein.

125.

Through *EXPERIAN*'s actions, inactions and conduct, *EXPERIAN* has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded his privacy.

126.

*EXPERIAN* has likewise negligently, willfully and/or intentionally damaged plaintiff's property rights in his credit report and reputation and standing in the community.

127.

Further, *EXPERIAN*, by its actions stated above, intentionally inflicted emotional distress on Plaintiff.

128.

Defendant, *EXPERIAN,* has defamed Plaintiff and invaded his privacy.

129.

*EXPERIAN* also breached its various and multiple agreements and contracts with their various subscribers [whose accounts were disputed by plaintiff], by continuously reporting false credit information about plaintiff despite clear information in their files showing the validity of plaintiff's disputes.

130.

Further, by violating the FCRA and using unreasonable procedure for data accuracy and integrity, *EXPERIAN* likewise breached their contractual duties.

131.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *EXPERIAN*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

132.

Further, on multiple occasions, *EXPERIAN* sent reinvestigation results to plaintiff which evidenced their decision to merely mimic its subscribers' replies to the inadequate reinvestigation disputes *EXPERIAN* conveyed.

133.

Further, *EXPERIAN's* reinvestigation results contained conflicting responses wherein it "verified" the inaccurate accounts.

134.

*EXPERIAN* suggested that the creditors had "verified" the inaccurate accounts.

135.

From some unknown date through the present time period, Defendant, *EXPERIAN*, has continually added, stored, maintained and disseminated personal and credit information, in consumer

-27-

reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice by the plaintiff and subscribers that such information was erroneous.

136.

*EXPERIAN* ignored plaintiff's requests for copies of his credit report and failed to timely tender plaintiff's credit report upon request by him.

137.

Defendant, *EXPERIAN*, has engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.

138.

In addition to actual or compensatory damages, and other sums, Defendant, *EXPERIAN*, is liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under common law, state[s]' laws and/or for willful violation(s) of the provisions of the Fair Credit Reporting Act.

139.

*EXPERIAN* has negligently and/or willfully violated the Fair Credit Reporting Act in multiple respects and is liable unto plaintiff through 15 U.S.C. 1681n and 1681o.

### *LIABILITY OF TRANS UNION*

140.

In this action, Defendant, *TRANS UNION*, is a *consumer credit reporting agency* as defined in the Fair Credit Reporting Act. **15**

-28-

U.S.C. 1681a.

141.

In this action, Defendant, *TRANS UNION*, prepared, issued, assembled, transferred and otherwise reproduced *consumer reports*, regarding Plaintiff, as defined in the Fair Credit Reporting Act. **15 U.S.C. 1681a.**

142.

*TRANS UNION* maintains a contract with smaller affiliate bureau and legal and contractual agent, wherein they share data and other assets.

143.

*TRANS UNION* allows their credit reporting database, which takes in, warehouses, maintains and manipulates data supplied by their subscribers, to be accessed by their affiliate bureaus and subscribers.

144.

*TRANS UNION* and their affiliate bureaus and subscribers have access to consumer credit reports, prepared by *TRANS UNION*, from the same data pool, in the same database, and *TRANS UNION* has duties to each consumer, including plaintiff, about whom they report, as provided in the Fair Credit Reporting Act.

145.

*TRANS UNION*'s subscribers have repeatedly supplied false data to *TRANS UNION* and attributed said data to plaintiff.

146.

Plaintiff advised *TRANS UNION,* through their subscribers and *directly*, on multiple occasions, of the false data and demanded that the data be removed from his consumer reports and files.

147.

*TRANS UNION* failed to properly reinvestigate plaintiff's disputes and *TRANS UNION* continued to prepare and issue false consumer reports.

148.

*TRANS UNION* and the disputed creditors-subscribers, exchanged information about plaintiff's disputes and the inaccurate accounts through their reinvestigation divisions and physical file division, as well as its computerized systems, internal notes and CDV/ACDV/UDF processes.

149.

*TRANS UNION* and the disputed creditors-subscribers, were very aware of plaintiff's disputes, as well as their inadequate and illegal reinvestigation, and the subscribers' responses to their contacts and their decision to leave the disputed, false data as attributable to plaintiff.

150.

*TRANS UNION* took inadequate action to correct plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

151.

-30-

Likewise they failed to take necessary and reasonable steps to prevent further inaccuracies from entering plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by **TRANS UNION** and relayed for further use, reliance and publication by their subscribers.

152.

**TRANS UNION** failed to adopt and follow "reasonable procedures" to assure the confidentiality, proper utilization and maximum possible accuracy of Plaintiff's consumer credit reports and other personal information, as required by the Fair Credit Reporting Act, which they compiled, used and manipulated in order to prepare consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations.

153.

**TRANS UNION** failed to adopt and follow "reasonable procedures" to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data bank, as required by the Fair Credit Reporting Act.

154.

From some unknown date through the present time period, Defendant, **TRANS UNION**, has continually added, stored, maintained

-31-

and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the plaintiff and subscribers that such information was inaccurate.

155.

*TRANS UNION* through its fault, as described herein, caused great and irreparable injury to Plaintiff herein.

156.

Through *TRANS UNION*'s actions, inactions and conduct, *TRANS UNION* has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded his privacy.

157.

*TRANS UNION* has likewise negligently, willfully and/or intentionally damaged plaintiff's property rights in his credit report and reputation and standing in the community.

158.

Further, *TRANS UNION*, by its actions stated above, intentionally inflicted emotional distress on Plaintiff.

159.

Defendant, *TRANS UNION,* has defamed Plaintiff and invaded his privacy.

160.

*TRANS UNION* also breached its various and multiple agreements and contracts with their various subscribers [whose

-32-

accounts were disputed by plaintiff], by continuously reporting false credit information about plaintiff despite clear information in their files showing the validity of plaintiff's disputes.

161.

Further, by violating the FCRA and using unreasonable procedure for data accuracy and integrity, *TRANS UNION* likewise breached their contractual duties.

162.

Plaintiff, as a third party beneficiary of those subscriber contracts, has been harmed by *TRANS UNION*'s breach of those contracts and further asserts the breach of those agreements herein.  Those breaches have damaged plaintiff.

163.

Further, on multiple occasions, *TRANS UNION* sent reinvestigation results to plaintiff which evidenced their decision to merely mimic its subscribers' replies to the inadequate reinvestigation disputes *TRANS UNION* conveyed.

164.

Further, *TRANS UNION's* reinvestigation results contained conflicting responses wherein it "verified" the inaccurate accounts.

165.

*TRANS UNION* suggested that the creditors had "verified" the inaccurate accounts.

-33-

166.

From some unknown date through the present time period,
Defendant, **TRANS UNION**, has continually added, stored, maintained
and disseminated personal and credit information, in consumer
reports it prepared and issued, about the Plaintiff which was
inaccurate, false, erroneous and misleading despite notice by the
plaintiff and subscribers that such information was erroneous.

167.

**TRANS UNION** ignored plaintiff's requests for copies of his
credit report and failed to timely tender plaintiff's credit
report upon request by him.

168.

**TRANS UNION** likewise violated the mandates of the FCRA by
sending plaintiff a false credit report which was issued in blank
so as to conceal the true contents of the report at that time.

169.

Defendant, **TRANS UNION**, has engaged in unfair and deceptive
trade and business practices and are liable under various states'
laws for those violations.

170.

In addition to actual or compensatory damages, and other
sums, Defendant, **TRANS UNION**, is liable unto Plaintiff in a sum
to be assessed by the trier of fact for punitive/exemplary
damages under common law, state[s]' laws and/or for willful
violation(s) of the provisions of the Fair Credit Reporting Act.

-34-

171.

*TRANS UNION* has negligently and/or willfully violated the Fair Credit Reporting Act in multiple respects and is liable unto plaintiff through **15 U.S.C. 1681n and 1681o.**

### *LIABILITY OF BANK ONE*

172.

*BANK ONE* is a "user" of credit information and "furnisher" of credit information as discussed in the Fair Credit Reporting Act.

173.

*BANK ONE* failed to exercise any care or reason before it launched a collection campaign and false credit reporting campaign against plaintiff. *BANK ONE* failed to adequately identify the entity or person requesting the auto lease from them.

174.

*BANK ONE* owed duties of reasonable care to plaintiff and *BANK ONE* negligently, recklessly and/or intentionally committed acts and omissions in violation of plaintiff's rights.

175.

*BANK ONE* recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information to various third parties, including the national consumer credit reporting agencies, concerning Plaintiff with reckless disregard

-35-

for the truth of the information.

176.

The consumer credit reporting agencies re-reported and further distributed the false information set into motion by **BANK ONE**.

177.

**BANK ONE** has authorized the national consumer credit reporting agencies, Equifax Credit Information Services, Trans Union and Experian, to report and re-report consumer credit data supplied to the national consumer credit reporting agencies by **BANK ONE**.

178.

**BANK ONE**'s publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, and emotional distress and mental anguish.

179.

**BANK ONE** was notified of the inaccurate information, once Plaintiff became aware of the **BANK ONE**'s illegal collection and credit reporting, however, **BANK ONE** continued to issue and/or publish report(s) to various consumer reporting agencies which contained erroneous, inaccurate and false information about the Plaintiff.

180.

-36-

**BANK ONE**, through their actions, inactions and fault, as described herein, caused great and irreparable injury to Plaintiff.

181.

Through their actions, inactions and fault, **BANK ONE** has, with willful intent to injure and/or maliciously, defamed Plaintiff and invaded his privacy.

182.

**BANK ONE** has likewise negligently, willfully and/or intentionally damaged plaintiff's property rights in his credit report and reputation and standing in the community.

183.

Further, **BANK ONE**, by their actions, inactions and fault, intentionally inflicted emotional distress on Plaintiff.

184.

**BANK ONE**'s fault gave rise to foreseeable damages incurred by the plaintiff.

185.

Despite the plaintiff's disputes, **BANK ONE** failed to appropriately react to the disputed billing errors and continued to falsely report said auto lease account as attributable to plaintiff and used continued false reportings in an attempt to collect said disputed amounts from plaintiff.

186.

Further, Equifax Credit Information Services, EXPERIAN and

-37-

TRANS UNION, [as well as some of *their affiliates*],  also advised *BANK ONE* that plaintiff disputed the account and false credit reportings.

187.

Despite receipt of the same dispute a number of times, *BANK ONE* repeatedly reported the false, derogatory information to third persons.

188.

According to the national credit reporting agencies' reports, *BANK ONE* continued to falsely report about plaintiff and attribute the disputed account and negative reporting to plaintiff.

189.

The credit reporting agencies maintain subscriber contracts and relationships with *BANK ONE* separately and individually, under which *BANK ONE* is allowed to report credit data and have same placed in the credit reporting files and records of those entities so that such data may be further reported to any and all of the thousands of subscribing entities and persons.

190.

Under the subscriber contracts *BANK ONE* owes a number of duties, including the duty to report truthful and accurate information about its customers *and other consumers*, including plaintiff.  Plaintiff is a stipulated beneficiary of those

-38-

contracts.

191.

**BANK ONE** also breached their various and multiple agreements

and contracts with the credit reporting agencies, Equifax Credit

Information Services, **EXPERIAN, and TRANS UNION**, *[and/or their*

*affiliates]* [collectively "credit reporting agencies"], by

continuously reporting false credit information about plaintiff.

192.

Plaintiff, as a third party beneficiary of those subscriber

contracts, has been harmed by **BANK ONE**'s breach of those

contracts and further asserts the breach of those agreements

herein.  Those breaches have damaged plaintiff.

193.

**BANK ONE** has likewise repeatedly violated the Fair Credit

Reporting Act, **15 U.S.C. 1681s-2[b]**, by failing to respond to

reinvestigation requests by supplying accurate and truthful

information but rather continuing to report false and inaccurate

information and failing to retract, delete and suppress false and

inaccurate information about the plaintiff, as described more

fully herein.  Defendant is therefore further liable for its

willful and/or negligent violation[s] of 1681s-2[b] pursuant to

sections **1681n and/or 1681o**.

194.

**BANK ONE** is aware that their reportings and activities would

[and will] damage plaintiff and his ability to enjoy life and utilize the credit rating and reputation property rights he secured by honoring his obligations to all of his creditors.

195.

On numerous occasions, **BANK ONE** reported, via its contractual and legal agents, the credit reporting agencies, false and inaccurate information about the plaintiff, as described more fully herein.

196.

Defendant, **BANK ONE**, has engaged in unfair and deceptive trade and business practices and are liable under various states' laws for those violations.

**WHEREFORE PLAINTIFF, STANFORD B. GAUTHIER, II, PRAYS** that after all due proceedings be had there be judgment herein in favor of Plaintiff and against Defendants as follows:

1) That there be Judgment in favor of **STANFORD B. GAUTHIER, II,** and against **EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, L.L.C. A/K/A TRANS UNION CORPORATION, BANC ONE TEXAS LEASING CORP., BANK ONE, TEXAS, N.A., and BANC ONE ACCEPTANCE CORPORATION,** jointly, severally and in solido, for all reasonable damages sustained by Plaintiff including but not limited to compensatory damages associated with the costs of out-of-pocket expenses, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal safety and security, and for punitive damages, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid; and

2)   That this Honorable Court order all consumer
     reporting agencies-defendants and users of
     information and subscribers which supply
     information to such agencies, made defendants
     herein, to reinvestigate and correct the credit
     report(s) and credit history of Plaintiff.

    FURTHER, Prays for all such additional, general and
equitable relief as may be necessary and proper in the premises.

                    Respectfully submitted:


                    _____
                    **LAWRENCE C. BILLEAUD, LBR#** _2010 6_
                    1007 St. John Street
                    Lafayette, Louisiana   70501
                    (337) 593-9000
                    FAX   593-9001

                    **BODENHEIMER, JONES & SZWAK, LLP**


                    By: _____
                    **DAVID A. SZWAK, LBR#21157**
                       610 Marshall St., Ste. 905
                       Shreveport, Louisiana   71101
                       (318) 424-1400
                       FAX   424-1476
                    **ATTORNEYS FOR PLAINTIFF**

                              -41-